UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-148-RJC

| ZANE JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| GEORGE SOLOMON, Director of Prisons, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Amended Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 16); on Plaintiff's Motion to Submit Evidence, (Doc. No. 6); Plaintiff's Motion to Substitute Party, (Doc. No. 7); Plaintiff's Motion for Temporary Restraining Order, (Doc. No. 8); Plaintiff's Motion for Emergency Temporary Kosher Tray [to] be Ordered for All Kosher Inmates, (Doc. No. 9); Plaintiff's Motion to Amend Defendant Title, (Doc. No. 12); and Plaintiff's Motion to Appoint Counsel, (Doc. No. 14).

**I.  BACKGROUND**

Pro se Plaintiff Zane Johnson, currently incarcerated at Lanesboro Correctional Institution ("Lanesboro"), filed a Complaint in this action on March 8, 2013, pursuant to 42 U.S.C. § 1983, and he filed an Amended Complaint on December 19, 2013.[1] Although Plaintiff does not identify in his Amended Complaint the legal claims he purports to bring, the Court

---

[1] On December 3, 2013, this Court entered an Order requiring Plaintiff to re-submit the Complaint because the Complaint in its current form was illegible.

1

notes that in his original Complaint he alleged that Defendants are violating his First Amendment right to the free exercise of his religion and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 to 2000cc-5, by denying him a proper Kosher diet in accordance with his religious beliefs as a Hebrew Israelite. In the Amended Complaint, Plaintiff states this this cause of action arose at Central Prison in Raleigh, North Carolina, and that the violations are continuing at Lanesboro. In the Amended Complaint, Plaintiff names as Defendants George Solomon, identified as Director of the North Carolina Division of Prisons; "Mr. Ruppel and Mrs. Clark," identified as the Head of Kitchen Staff at Lanesboro; Jackie Parker, identified as the the Head Dietician for the North Carolina Division of Prisons with an address at 218 W. Morgan Street in Raleigh, North Carolina; Betty Liles, identified as having an address in Kernersville, North Carolina; and James Rice, identified as being employed at Central Prison in Raleigh, North Carolina. Plaintiff appears to be complaining that the meal that he is being served at Lanesboro does not correctly follow the Kosher guidelines pursuant to his religious beliefs as a Hebrew Israelite. Specifically, Plaintiff alleges the following in the Amended Complaint:

> My claim is that the Hebrew Israelites are [being fed from a] tray like [regular inmates] when the tray[s] are supposed to be order[ed] from a Kosher kitchen [due] to germs and no[t] getting the proper food like the five basic meats turkey, steak, chicken, baked fish. Now [Raleigh] is feeding right. Lanesboro plus Maury plus Scotland is feeding from a Kosher veggie menu and it [is] no[t] fair to lose … weight by being starved and forced of the diet due to the non-meat menu. I showed the court where Kosher meat vs. allow and temp tray is the kosher real way to feed Hebrew Israelite d[ue] to the menu from the Hebrew Israelite community Pub. [Raleigh] Dept. African Hebrew Israelite of Jerusalem P.O. Box 465 Dimona Israel 866000. I would love to honor my religion and the real forthcoming of the real food. They got people running off [from their] religion because of a veggie menu made up [by Raleigh] that in violate. Because the judge rule to serve Kosher but he thought it was going to be true Kosher not made up.

(Id. at 4).² For relief, Plaintiff states that he wants to be paid $1000 a day "for the time I have suffered and order [Raleigh] to go to the non-air temporary tray so we can get the Kosher meat tray not hand-made with a bag that [sic] fruit, cheese, bread, juice Real to go with the trays of the truck." (Doc. No. 16 at 4).

## II.   STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an

---

² This Court takes judicial notice of the fact that, in a lawsuit filed in the Eastern District of North Carolina, the plaintiff there, also an alleged Hebrew Israelite, alleged that prison officials were refusing to provide him with a kosher diet in violation of his right to practice his religion. In the district court's order dated July 17, 2012, the Court stated: "As for plaintiff's claims concerning receiving a kosher diet and gaining recognition of the Hebrew Israelite religion, defendants seek summary judgment on the ground that the claim is now moot in light of DOP's efforts to provide plaintiff a kosher diet and add the Hebrew Israelite religion to DOP's religious practices manual. (Mem. Supp. Mot. Summ. J. at 9-10.)" Yisrael v. Beasley, No. 5:08-CT-3079-H, 2012 WL 2919984, at *6 (E.D.N.C. July 17, 2012). In this action, Plaintiff appears to be contending that, although Lanesboro is now offering meals that it identifies as Kosher, Lanesboro is still not serving true Kosher meals. At least one other North Carolina state court inmate has a brought a similar claim, which is currently pending in the Eastern District of North Carolina. See Scott v. Keller, No. 5:11-CT-3009-FL, 2013 WL 3490356 (E.D.N.C. July 11, 2013).

indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Initial Review of Plaintiff's Amended Complaint

Plaintiff, who identifies himself as a Hebrew Israelite, first claims that Defendants' failure to provide him a specific diet violates the Free Exercise Clause of the First Amendment, which provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend. I. Specifically, Plaintiff alleges that the diet that he is being fed at the prison is not a true Kosher diet and he is, therefore, unable to practice his religion. He also complains that certain meats have been taken out of the diet, causing him to lose weight. Plaintiff also contends that Defendants have violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 et seq.[3]

---

[3] Before 1994, claims that regulations violated a prisoner's right to freely exercise his or her religion were evaluated under the "reasonableness" standard set forth in Turner and O'Lone. In 1993, Congress passed the Religious Freedom Restoration Act ("RFRA"), which stated that the "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. See 42 U.S.C. § 2000bb-1(b) (1994). The United States Supreme Court subsequently declared the RFRA unconstitutional in that Congress had exceeded its powers under Section 5 of the Fourteenth Amendment. See City of Boerne v. Flores, 521 U.S. 507, 536 (1997). In 20013, the RLUIPA was enacted in response to the Supreme Court's holding that RFRA was unconstitutional.

4

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). They retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam)). Nonetheless, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). A prison regulation impinging on constitutional rights is valid if it is reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). Indeed, the role of the federal judiciary is not to micro-manage state prisons or to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given due deference. See Sandin v. Conner, 515 U.S. 472, 482 (1995).

Under RLUIPA, the government is prohibited from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). Although RLUIPA does not define the term "substantial burden," the United States Court of Appeals for the Fourth Circuit has held that a "substantial burden on religious exercise occurs [under RLUIPA] when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)). "On the

opposite end of the spectrum . . . a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004). "Religious exercise" in this context includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A plaintiff asserting a claim under RLUIPA must allege that: (1) he seeks to engage in an exercise of religion; and (2) the challenged practice substantially burdens that exercise. 42 U.S.C. § 2000cc-2(b). Once the plaintiff establishes a prima facie case, the burden of persuasion shifts to the defendants to show that their practice is the least restrictive means of furthering a compelling government interest. Lovelace, 472 F.3d at 185 (citing 42 U.S.C. § 2000cc-1(a)). Although RLUIPA forbids judicial inquiry into the question of whether a particular belief or practice is "central" to a prisoner's religion, 42 U.S.C. § 2000cc-5(7)(A), RLUIPA protects only those beliefs or practices that are both sincerely held and rooted in religious belief. See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005) (noting that, under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a request for a requested accommodation, is authentic" and whether his "professed religiosity" is "sincere").

Here, taking Plaintiff's allegations as true, and construing all inferences in his favor, the Court finds that Plaintiff's claims for violation of his right to the free exercise of his religion under the First Amendment and his rights under the RLUIPA are not clearly frivolous. Therefore, Plaintiff's action survives initial review.

B. Plaintiff's Various Motions

First, in Plaintiff's Motion to Submit Evidence, he has attached for the Court's review the Policies and Procedures for the North Carolina Prisons Food and Nutrition Management. The Court will grant Plaintiff's motion to the extent that Plaintiff may rely on these documents if the action proceeds to the summary judgment stage and/or trial.

Next, as to Plaintiff's "Motion to Substitute Party," Plaintiff asks the Court to substitute the name John Doe in the original Complaint for the current Director of North Carolina Prisons. (Doc. No. 7 at 1). As to Plaintiff's Motion to Amend, Plaintiff also seeks to amend his Complaint to "amend the Defendant title to the N.C. DOP and the 'John Does' that [are] Behind the N.C. D.O.P." (Doc. No. 12 at 1). The Court will deny both motions as moot because Plaintiff has filed an Amended Complaint, which superseded the original Complaint. See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 456 n.4 (2009).

Next, as to Plaintiff's Motion for Temporary Restraining Order, Plaintiff seeks a temporary restraining order essentially requiring Defendants to show cause as to why they are not preparing Kosher meals to Lanesboro inmates as ordered by Central Prison and in a manner that Plaintiff believes they should be prepared. (Doc. No. 8). In a separate motion, Plaintiff also seeks an order from the Court requiring Defendants to order an Emergency Temporary Kosher Tray for all Kosher inmates. (Id. at 9). The Court will deny both motions, as Plaintiff has not shown that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of preliminary relief.[4] See Winter v. Natural Res. Council, 555 U.S. 7 (2008).

Finally, as to Plaintiff's Motion to Appoint Counsel, Plaintiff seeks counsel based on the

---

[4] Furthermore, Plaintiff's motions for a temporary restraining order and a preliminary injunction as to any violations committed while he was at Central Prison are moot because he is now incarcerated at Lanesboro.

fact that he is incarcerated and cannot afford counsel, that he has limited knowledge of the law and the issues in this case are complex, that he has no access to a law library, and that he has not been able to obtain private counsel. See (Doc. No. 14). There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Notwithstanding Plaintiff's contentions to the contrary, this case does not present exceptional circumstances that justify appointment of counsel. Therefore, Plaintiff's Motion to Appoint Counsel will be denied.

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Submit Evidence, (Doc. No. 6); Plaintiff's Motion to Substitute Party, (Doc. No. 7); Plaintiff's Motion for Temporary Restraining Order, (Doc. No. 8); Plaintiff's Motion for Emergency Temporary Kosher Tray [to] be Ordered for All Kosher Inmates, (Doc. No. 9); Plaintiff's Motion to Amend Defendant Title, (Doc. No. 12); and Plaintiff's Motion to Appoint Counsel, (Doc. No. 14), are all **DENIED**.

2. This matter survives initial review pursuant to 1915(e) and 1915A.

3. **IT IS FURTHER ORDERED THAT**, in accordance with 28 U.S.C. § 1951(d), the Clerk of this Court is respectfully instructed to issue process and to provide such process along with sufficient service copies of the Complaint, as well as copies of this Order, to the United States Marshal. The Clerk shall provide

Plaintiff with summonses forms to fill out for each Defendant and return to this Court. The United States Marshal shall then serve a copy of the Complaint, Summonses, and this Order upon Defendants in accordance with Rule 4, Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States.

_____
Robert J. Conrad, Jr.
United States District Judge